# United States District Court
## Western District of Wisconsin

Tyler Holte,

  Plaintiff,

 V.

Case No. 20-Cv-131

The City of Eau Claire,
and Hunter Braatz
(in his individual capacity),

  Defendants.

# COMPLAINT

## I.  NATURE OF ACTION

101. Tyler Holte brings this civil action under Title 42 U.S.C. §1983 to obtain appropriate relief for the violation of rights secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, which occurred when Officer Hunter Braatz of the City of Eau Claire Police Department responded to Mr. Holte's manifestation of a mental health crisis by shooting him with an AR-15 semi-automatic rifle, even though Mr. Holte was unarmed.

## II.     JURISDICTION AND VENUE

### A.     Jurisdiction.

201.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (42 U.S.C. § 1983 jurisdiction).

### B.     Venue

202.    The Western District of Wisconsin is the proper venue for this action because the Plaintiff's claims arose within the geographical boundaries of the Western District of Wisconsin within the meaning of U.S.C. § 1391(b).

## III.    PARTIES

### A.     Plaintiffs

301.    Plaintiff Tyler Holte is a natural person with the capacity to sue and be sued in this Court.

### B.     Defendants

302.    Defendant Hunter Braatz is a natural person with the capacity to sue and be sued in this Court.

303.    The individual Defendant was a police officer employed by the Defendant City of Eau Claire at all times material to this action.

304. At all times material to this action, the individual Defendant was acting within the scope of his or her employment within the meaning of § 895.46 Wis. Stats.

305. At all times material to this action, the individual Defendant was acting under color of state law.

306. The Defendant City of Eau Claire is a Wisconsin municipality with the capacity to sue and be sued in this Court. It was the employer of the individual Defendant when the conduct alleged herein was committed.

### IV.   ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

401. On April 1, 2015, Officer Braatz unreasonably used deadly force when he used his department-issued AR-15 semi-automatic rifle to shoot Tyler Holte twice, resulting in Holte's permanent disfigurement.

402. During the weeks leading up to April 1, 2015, Tyler Holte, who had recently turned 25, had been struggling with addiction issues and was potentially suicidal.

403. During the month of March, 2015, Holte had been living with one of his mother's friends, who was assisting Holte with sober living.

404. On or around March 28th, Holte left the friend's residence to stay with his girlfriend in a motel.

405. Holte's mother became very worried about her son's welfare, and contacted the police to ask for help.

406. On or around March 31, 2015, the Eau Claire Police Department attempted a welfare check on Holte, but could not locate him.

407. On or around March 31, 2015, Holte's probation officer also reported to the Eau Claire Police Department that Holte had missed an appointment with her the previous day, so that a warrant should be issued for his arrest.

408. On April 1, 2015, Holte's mother called the police to inform them that she had spotted Holte at a local parking garage with his girlfriend, and asked the police to respond.

409. Police responded, and spotted Holte at the location his mother reported, but Holte fled.

410. The police decided not to engage in a hot pursuit of Holte, as they knew it would not be wise to escalate the situation.

411. A short while later, Holte was located. He had parked his vehicle in the parking lot of the VFW Club on Starr Avenue, which is situated on the shores of the Dells Pond, a feature of the Chippewa River:



412. Holte was spotted walking into the woods along the river bank on the southwest side of the building.

413. It was mid-afternoon, sunny, and Holte was wearing jeans, a white shirt, and a tan baseball cap.

414. Once the vehicle was located, police determined that Sgt. Quella would assume incident command, and Sgt. Pieper would assume tactical command.

415. The Sergeants made sure that the officers who would be participating in Holte's apprehension met to formulate a plan prior to engaging Holte.

416. As part of the briefing, the officers were informed that Holte was suicidal and that he might want the police to shoot him.

417. Part of the plan that emerged from this meeting was to ensure that that the officers who engaged Holte had a less lethal impact shotgun at the ready.

418.   Less lethal impact weapons are important police tools, because they can incapacitate a subject, or otherwise aid in bringing a subject under control, without the need to use firearms that fire metal bullets, which pose a deadly risk to anyone within range of the bullets, including civilians and other officers.

419.   Officer Jacob Gullickson was assigned to carry a less lethal weapon, a shotgun loaded with beanbag rounds.

420.   Officer Braatz and Sgt. Quella were the safety officers, and they made sure that Officer Gullickson's shotgun was completely unloaded and reloaded with beanbag rounds.

421.   Multiple officers had formed a perimeter around the area where Holte was believed to be situated, surrounding it, and were tasked to provide lethal cover as a back-up to the less-lethal beanbag shotgun held by Officer Gullickson.

422.   As part of the search, Officers Braatz and Ollmann went down the stairs on the southwest side of the VFW building towards the Dells Pond. They walked along the riverbank searching for Holte until they came to a clearing.

423.   Officer Braatz reported on the radio that he could see a white male and indicated Holte's general location.

424.   At that point, Officer Gullickson, equipped with his less lethal beanbag shotgun, was near the upper tree line

425.   When Officer Gullickson looked where Braatz had indicated, he had a clear view of Holte.

426. Officer Gullickson reported that Holte appeared to be in a seated position.

427. Sgt. Pieper and others were providing lethal coverage with standard firearms, while Officer Gullickson continued to provide the less-lethal coverage with the beanbag shotgun.

428. Officer Gullickson, yelled, "Police department. Show me your hands."

429. Officer Gullickson later reported that Holte looked up at Officer Gullickson and responded, "What did I do?" while remaining seated and not raising his hands.

430. Officer Gullickson repeated the command and told Holte that he needed to cooperate.

431. After approximately 35 seconds of Officer Gullickson interacting with Holte in this way, Officer Braatz reported on the radio that he was standing right below Holte.

432. Officer Braatz reported on the radio that he did not believe Holte could see him or Officer Ollmann standing behind Holte.

433. Officer Gullickson could see Officer Braatz, further down the embankment from Holte, towards the water.

434. Officer Gullickson stated on the radio that those officers needed to fan out to avoid the potential for cross fire.

7

435. Officer Braatz later reported that he yelled to Holte, ordering him to show his hands.

436. Officer Braatz later reported that he could see the location of Holte's hands, but could not see whether or not there was anything in Holte's hands.

437. Officer Braatz later reported that he did not see a gun in Holte's possession.

438. Officer Braatz later reported that Holte did not comply with the police commands to show his hands.

439. Officer Braatz later reported that he then fired his rifle twice at Holte.

440. Officer Braatz's shots came approximately 25 seconds after he reported on the radio that he was standing behind Holte.

441. Holte was hit twice, and his body slid down the hill.

442. Officer Braatz was the only officer on scene to fire any weapon.

443. Officers administered first aid to Holte for his gunshot wounds to his shoulder and leg until Holte could be transported by boat to an ambulance, and then a hospital.

444. No weapon was found on Holte's person or in the area where he had been when he was shot.

445. Defendant Braatz used excessive and unreasonable deadly force when he shot the unarmed Holte, without giving a warning, in the absence of any

8

objective basis to perceive an imminent threat of any kind, much less of death or serious physical harm to the officer or others.[1]

### V. BASIS OF LIABILITY

#### A. Unreasonable Seizure: Fourth Amendment.

501. Defendant Braatz committed a violation of the Fourth Amendment's prohibition on unreasonable seizures when he shot Tyler Holte.

#### B. Statutory Indemnification Liability of Defendant City.

502. The Defendant City of Eau Claire is liable for the unlawful acts of the individual Defendants because they were acting within the scope of their employment pursuant to Sec. 895.46, Wis. Stats. The Plaintiff does not allege at this time that the wrongful acts alleged herein were carried out pursuant to a custom or policy of the Defendant City.

---

[1] See, e.g., *Estate of DiPiazza v. City of Madison*, No. 16-CV-060-WMC, 2017 WL 1337313, at *6 (W.D. Wis. Apr. 11, 2017):

> The Supreme Court has long held, as a matter of legal principle, that "it is reasonable to use deadly force if the officer, when exercising his or her reason and judgment, has probable cause to believe that the suspect poses a threat of death or serious physical harm to the officer or others and, whenever possible, warns the suspect before firing." *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988) (citing *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985)).

## VI.   DAMAGES and EQUITY

### A.   Compensatory Damages

601.   By virtue of the unlawful actions alleged above, Tyler Holte, suffered physical pain, emotional anguish, financial losses, medical expenses, and other damages for which he should be compensated in amounts deemed just by the Court.

### B.   Punitive Damages

602.   Because the acts of the Defendant Braatz herein alleged was carried out with reckless disregard for Tyler Holte's fundamental rights, the Plaintiff also seeks an award of punitive damages against Officer Braatz to deter him and others similarly situated from committing similar wrongful acts in the future.

## VII.   CONDITIONS PRECEDENT

701.   All conditions precedent to this action within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## VIII.   JURY DEMAND

801.  Plaintiff hereby demands a trial by jury of all issues triable of right to a jury.

## IX.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that the Court grant judgment against the Defendants, awarding compensatory damages in an amount that will fairly compensate

Plaintiff Holte for his injuries; punitive damages in amounts that will effectively deter others from similar violations and justly punish the individual Defendant for his actions; and costs, attorneys' fees and litigation expenses as well as any further relief this Court deems just and lawful.

Dated this Tuesday, February 11, 2020.

Respectfully submitted,

Tyler Holte,

Plaintiff, by

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar Number 1016284
ANDREA J. FARRELL

State Bar No. 1064773
131 West Wilson Street, Suite 1200
Madison, WI  53703
Phone:         608 283-6001
Fax:             608 283 0945
E-mail:        jsolson@scofflaw.com


/s/     Jeff Scott Olson
_____

Jeff Scott Olson

ATTORNEYS FOR PLAINTIFF