UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

TYLER HOLTE,

      Plaintiff,      CASE NO. 20-CV-131

 v.

CITY OF EAU CLAIRE,
and HUNTER BRAATZ
(in his individual capacity),

      Defendants.

---

**DEFENDANTS' MOTION IN LIMINE NO. 8 TO EXCLUDE DCI REPORTS OF THE OFFICERS' SCENE WALK THROUGHS AND INTERVIEWS**

---

  City of Eau Claire and Hunter Braatz, by their attorneys, MUNICIPAL LAW & LITIGATION GROUP, SC., respectfully submit the following Motion in *Limine* to Exclude the DCI Reports of the Officers' Scene Walk Throughs and Interviews.

  The Wisconsin Department of Justice Division of Criminal Investigation conducted an investigation of the April 1, 2015 shooting. During the investigation, DCI special agents conducted a "scene walk through" with Braatz and Ollmann. The DCI special agents then prepared written reports that summarized (in the DCI agents' own words) the information they received during the site walk through with Braatz and Ollmann. (Reginato Aff., Ex. 4, DCI's Written Summary of Braatz and Ollmann Scene Walk Through.)

  The DCI agents then conducted interviews of the involved officers to obtain their recollection of the events surrounding the shooting, including what the officers' observed, what the officers' said, and what the officers heard other officers say on April 1, 2015. DCI special agents then prepared reports which include summaries (in the DCI agents' own words) of the

1

information they received during the officers' interviews. (Reginato Aff., Ex. 5, DCI's Written Summary of Interviews of Braatz and Ollmann.)

Defendants anticipate that Holte will make reference to and/or attempt to introduce into evidence at trial the DCI agents' reports of the "scene walk though" and officers' interviews. The Court should preclude Holte from doing the same for the following reasons.

*First*, the reports themselves constitute hearsay. And, they are not admissible under the business records exception, or any other hearsay exception. Fed. R. Evid. § 803(6) excepts certain business records if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Here, there is a lack of trustworthiness with respect to the reports prepared by the DCI special agents. A review of the DCI investigatory file demonstrates that DCI special agents were careless in their reports. For example, DCI Special Agent Joseph Welsch – who prepared the report of his scene walk through with Braatz and the report of his interview with Braatz – made critical mistakes in reporting the evidence during his investigation, including (but not limited to):

- <u>Incorrectly reporting critical information from the 911 call made by Holte's mother, Annette Mott</u>: Special Agent Welsch prepared a summary of the 911 call and incorrectly reported that "**Holte told her [Mott] he had a gun**" during the

2

call. During his deposition, Special Agent Welsch reviewed the 911 call audio and confirmed that Mott indicated that she did not know whether Holte had a gun during the call. And, that Mott never indicated that Holte told her he had a gun during that call. Notably, a DCI supervisor reviewed Special Agent Welsch's report and failed to recognize or correct this critical mistake. During his deposition, Special Agent Welsch testified that information regarding whether a suspect has a gun is one of the most, if not the most, important piece of information to obtain during a DCI officer-involved shooting investigation. Special Agent Welsch admitted that he made this critical mistake in his reporting (which he did not discover until it was brought up during his deposition).[1]

(Reginato Aff., Ex. 6, Welsch Summary of 911 Call.)

- <u>Incorrectly reporting necessary information from material witnesses</u>: Special Agent Welsch prepared a summary of the neighborhood canvas he conducted shortly after the shooting, where he interviewed various witnesses. Notably, Special Agent Welsch incorrectly reported a material witness's name in his report (Donald Hendrickson, instead of Donald *Hendricks*). Special Agent Welsch testified the information Donald *Hendricks* provided during his interview was important to his investigation.

(Reginato Aff., Ex. 7, Welsch Summary of Neighborhood Canvas.)

- <u>Incorrectly failing to report significant information from Ollmann's squad-car video</u>: Special Agent Welsch prepared a summary of the quad-car videos he reviewed. In the video from Ollmann's squad-car, Ollmann can be heard telling other officers that he spoke with Mott, and that Mott stated Holte had a weapon. Special Agent Welsch testified this information was "significant" to the investigation; however, he incorrectly reported "Nothing observed or heard of significance" in his report.

(Reginato Aff., Ex. 8, Welsch Summary of Squad-Car Video.)

- <u>Failing to recognize that Holte's vehicle was marked in the wrong location</u>: Special Agent Welsch received and reviewed a scene reconstruction and failed to recognize that the "vehicle location" marked on numerous maps is blatantly incorrect. The maps indicate the vehicle was located on top of trees in the steep embankment (which is obviously incorrect), rather than on the north side of the parking lot. Special Agent Welsch "received and examined the reconstruction," and failed to recognize this significant error.

(Reginato Aff., Ex. 9, Welsch Report on Scene Reconstruction & Photograph.)

---

[1] The parties completed Special Agent Welsch's deposition on July 15, 2021 and have not yet received a certified transcript of the same. Counsel anticipates receiving a transcript early next week and will immediately file a copy of the same upon receipt.

3

Special Agent Welsch also testified that he has no recollection whatsoever of the scene walk throughs, and that he has no recollection whatsoever of the interviews he conducted with the officers. In fact, Special Agent Welsch cannot even recall whether Braatz explains Holte's movements and positioning in his own words during the interview, or whether Braatz provided a visual demonstration of the same (which Special Agent Welsch then explained in his own words in his report).[2]

*Second*, the reports include summaries of the interviews with the officers, which constitute a second layer of hearsay. *Jessup v. Miami-Dade Cty.*, 697 F. Supp. 2d 1312 (S.D. Fla. 2010) (stating that "while factual findings in internal affairs reports are generally admissible under an exception to the hearsay rule, Fed. R. Evid. 803(8), summaries of interviews that are contained in those reports are also double hearsay that cannot be admitted at trial….").

*Third*, the reports include additional hearsay within hearsay. For example, in the summary of Braatz' interview, Special Agent Welsch indicates that Braatz stated during his interview that "Sgt. Pieper then reported the vehicle was leaving…." *See e.g., Valdes v. Miami-Dade County*, 2015 WL 7253045 (S.D. Fla. 2015) ("The Court agrees with the plaintiff that the IA investigation report itself should be excluded from evidence. The IA investigation report consists mostly of witness summaries. It contains the summary of the plaintiff's statement and the statements of 13 police officers including the officers who were involved in the alleged excessive force incident on February 21, 2008. Witness summaries contained in reports are generally excluded under the hearsay rule.").

*Finally*, the summaries included in the reports are cumulative because the parties in this case will call the officers to testify at trial and explain – in their own words – their recollection of

---

[2] The same lack of trustworthiness argument applies should Holte argue the records are admissible under Fed. R. Evid. 803(8).

the events surrounding the shooting. *See e.g., Valdes*, 2015 WL 7253045 ("Additionally, the witness summaries are cumulative because presumably the parties will present testimony from various witnesses concerning what took place" during the incident.).

## **CONCLUSION**

For the reasons explained above, City of Eau Claire and Hunter Braatz respectfully ask the Court to grant their Motion in *Limine* to Exclude the DCI Reports of the Officers' Scene Walk Throughs and Interviews.

Dated this 16th day of July, 2021.

        **MUNICIPAL LAW & LITIGATION GROUP, S.C.**
        Attorneys for City of Eau Claire and Hunter Braatz.

        By: /s/ Matteo Reginato
            REMZY D. BITAR
            State Bar No: 1038340
            MATTEO REGINATO
            State Bar No: 1089724
            730 N. Grand Avenue
            Waukesha, WI 53186
            O: (262) 548-1340
            F: (262) 548-9211
            E: rbitar@ammr.net
                 mreginato@ammr.net